

# In the Missouri Court of Appeals
## Eastern District

DIVISION TWO

| | | |
|---|---|---|
| LONNIE HARRIS, | ) | No. ED100452 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | |
| | ) | |
| BI-STATE DEVELOPMENT AGENCY, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: March 18, 2014 |
| | ) | |

## Introduction

Bi-State Development Agency (Employer) appeals from the decision of the Labor and Industrial Relations Commission (Commission) awarding Lonnie Harris (Employee) disability benefits. We affirm.

## Factual and Procedural Background

Employee reported her bilateral carpal tunnel syndrome (CTS) as a work-related injury with the Missouri Department of Labor and Industrial Relations Division of Workers' Compensation (Division) on March 1, 2010. She made a claim for compensation with the Division on May 26, 2010. On June 9, 2010, Employer filed an Answer to the claim, denying liability for any injury alleged by Employee. On January 31, 2012, a Division Administrative Law Judge (ALJ) held a hearing and on January 31, 2013, denied benefits, finding that Employee "did not sustain an occupational disease

which arose out of and in the course of her employment." On February 19, 2013, Employee filed an Application for Review with the Commission. On February 25, 2013, Employer filed its Answer. On August 23, 2013, after due consideration of the facts and law, the Commission majority issued its decision reversing that of the ALJ and awarding Employee $5,229.92 in temporary total disability benefits; $23,709.16 in permanent partial disability (PPD) benefits; $200.00 in past medical expenses, and $724.94 for disfigurement. One member of the Commission filed a dissenting opinion, agreeing with the decision of the ALJ.

At the time Employee filed her claim for disability benefits in 2010, she had worked full-time as a Call-A-Ride van operator for Employer for more than ten years, since January 3, 2000. Her job duties as a Call-A-Ride van operator included driving more than one hundred miles eight hours per day picking up, dropping off, loading and unloading passengers from home, work and doctors' offices throughout the metropolitan St. Louis area. She transported up to eighteen passengers per day, some in wheelchairs. For the wheelchair-bound passengers, Employee exited the van, pushed and pulled the passengers onto an electric wheelchair lift, maneuvered them into the van, and secured the chairs to straps attached to the floor of the van. There were four straps per wheelchair to be secured, which required tightening of straps and twisting of knobs. The straps and knobs had to be very tight and secure because even a little slack could cause a wheelchair to turn over on a curve. When she finished securing a passenger, Employee would wiggle the wheelchair to make sure it was not "wobbly," then put the passenger's shoulder strap on so they were "good to go." Employee would do these same tasks in reverse when she had to unload the passengers.

2

When tightening the straps, Employee experienced symptoms in her hands causing her to jump. She would then switch hands. Employee kept a tight grip on the steering wheel of the van while driving throughout the day to maintain control over potholes and bumps and keep the back end of the van from swaying on turns. Although the van had power steering, Employee testified the van was more difficult to steer and turn than her own car and the steering wheel vibrated.

Employee began to experience hand symptoms between 2008 and 2009, which progressed to swelling and jolting pain in 2010, causing her to report her condition on February 27, 2010 at Touchette Regional Hospital. She was treated at BarnesCare and referred to her private physician, Dr. Prieb, who examined her in March 2010, ordered diagnostic tests, diagnosed left CTS, and performed a left carpal tunnel release on June 1, 2010. Employee returned to work with a full duty work release from Dr. Prieb on July 16, 2010. After nerve conduction studies on January 20, 2011 showed bilateral CTS, Dr. Bruce Schlafly performed a right carpal tunnel release on February 17, 2011. Employee returned to full duty work on April 13, 2011.

Employee has diabetes and high blood pressure, both controlled by medication. Employee is 5'6" and has fluctuated in weight during the time relevant to these proceedings from 195 to 249 pounds.

On April 19, 2010, Dr. Michele Koo examined Employee at Employer's request and diagnosed bilateral CTS, left worse than right, and bilateral thumb carpo-metacarpal joint (CMC) arthritis, left worse than right. Dr. Koo opined that Employee's bilateral CTS was not caused or aggravated by work factors, in that her work activities were not repetitive and did not require firm or repeat grasping that would not permit rest, and

3

lacked sufficient stress to cause bilateral CTS or CMC thumb arthritis. On October 15, 2010, Dr. Schlafly diagnosed Employee with bilateral CTS and opined it was caused by repetitive gripping and twisting of the steering wheel and securing the wheelchairs into place by pulling straps and tightening knobs. He recommended repeat nerve conduction studies and a right carpal tunnel release. On January 20, 2011, nerve conduction studies showed bilateral CTS and Dr. Schlafly performed a right carpal tunnel release on February 17, 2011. On September 6, 2011, Dr. Robert P. Margolis examined Employee and reviewed medical records at the request of her attorney. Dr. Margolis opined Employee's work activities were the prevailing factor that caused her bilateral CTS. On November 2, 2011, Dr. R. Evan Crandall examined Employee at Employer's request, and concluded her work was not the prevailing factor that caused her CTS, in that driving a van lacks the biomechanical risk factors to damage muscles and tendons of the hand and moving a steering wheel is not a repetitive stressor of muscles or tendons of the forearm. Dr. Crandall did not consider Employee's work activities with regard to maneuvering and securing the wheelchairs in his assessment.

Point on Appeal

Employer claims the Commission's decision awarding Employee disability benefits is not supported by competent and substantial evidence because it arbitrarily disregarded competent, substantial, and undisputed evidence that Employee's non-work risk factors, and not her job duties, caused her bilateral carpal tunnel syndrome.

4

<u>Standard of Review</u>

On appeal from a decision in a workers' compensation case, we may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

> (1) That the commission acted without or in excess of its powers;
> (2) That the award was procured by fraud;
> (3) That the facts found by the commission do not support the award;
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1[1]; <u>Hampton v. Big Boy Steel Erection</u>, 121 S.W.3d 220, 222 (Mo.banc 2003). "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." <u>Hampton</u>, 121 S.W.3d at 222-23.

<u>Discussion</u>

The Commission found the opinions of Employee's experts Dr. Schlafly and Dr. Margolis that Employee's work activities caused her CTS more credible than the opinions of Employer's experts Dr. Koo and Dr. Crandall that they did not. Employer claims the Commission's decision "should be reversed as a matter of law because [it] disregards the undisputed facts of the case." Employer propounds its experts' opinions that Employee had multiple non-work risk factors for developing CTS, including her age, diabetes, arthritis and weight; and Employee's work activities of securing wheelchairs only occurred for at most six minutes each day, which was not enough to cause CTS. Employer complains that the Commission disregarded these undisputed facts and testimony, and instead relied upon the "flawed and conclusory" opinions of Employee's experts in fashioning its award.

---

[1] All statutory references are to RSMo 2012, unless otherwise indicated.

In making its claim on appeal, Employer ignores well-settled case law which places the duty of accepting or rejecting medical evidence in the hands of the Commission. Lawson v. Ford Motor Co., 217 S.W.3d 345, 350 (Mo.App. E.D. 2007). We will affirm the Commission's decision to accept one of two conflicting medical opinions if that decision is supported by substantial and competent evidence. Id. Where there are conflicting medical opinions, we affirm the decision of the Commission in that regard unless it is against the overwhelming weight of the evidence. Id.

In this case, the Commission's decision to accept the opinions of Dr. Schlafly and Dr. Margolis as more credible than those of Drs. Koo and Crandall is not against the overwhelming weight of the evidence. Dr. Schlafly was Employee's treating surgeon. He opined that Employee's work as a van driver for Employer was the prevailing factor in causing her bilateral CTS, in that it resulted from her repetitive work of gripping and twisting the steering wheel of the van, as well as the more forceful work of securing the wheelchairs into place by pulling straps and tightening knobs. Employee testified that she kept a tight grip on the steering wheel throughout her eight-hour work day, because it vibrated, was difficult to steer, and she had to avoid potholes and keep the rear of the van from swaying. Pushing, pulling, and maneuvering passengers in wheelchairs also involve maintaining a tight grip on the handles.

Dr. Margolis also was of the opinion that Employee's work for Employer was the prevailing factor in causing her to develop bilateral CTS and PPD which he rated at 35% of the left hand and 30% of the right hand. He indicated a multiplicity factor should be added and recommended Employee avoid activity that exacerbated her discomfort.

The Commission noted that Employee's job duties involved not only driving but also maneuvering and securing passengers in wheelchairs, and that these activities required firm, repetitive grasping and involved repetitive stress to the flexor tendons and muscles of Employee's forearms. The Commission specifically determined that the opinions of Dr. Schlafly and Dr. Margolis "are supported by these facts as found" and thus "adopt their opinions and so find that employee's work for employer is the prevailing factor in causing her bilateral [CTS] and associated disability."

Based on the foregoing, we find that the Commission's decision to accept the medical testimony of Drs. Schlafly and Margolis was not against the overwhelming weight of the evidence. It was supported by competent and substantial evidence on the record as a whole, and as a result, we cannot conclude that the Commission erred in reversing the decision of the ALJ and awarding Employee benefits. See Lawson, 217 S.W.3d at 350. Point denied.

Conclusion

The decision of the Commission is affirmed.

_Sherri B. Sullivan_

Sherri B. Sullivan, Judge

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.

7